IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| CREE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:20CV198 |
| | ) | |
| WATCHFIRE SIGNS, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Cree, Inc. ("Cree"), initiated this declaratory judgment action on February 28, 2020, against Defendant Watchfire Signs, LLC ("Watchfire"). (ECF No. 1.) Defendant moves to either dismiss or transfer this action to the United States District Court for the Central District of Illinois.[1]  (ECF No. 14.)  For the reasons stated below, the Court will grant Defendant's motion to transfer.

**I.   BACKGROUND**

Cree, a North Carolina corporation with a principal place of business in Durham, North Carolina, is an innovator in light-emitting diodes ("LEDs") and manufactures LED lamps and components. (ECF No. 1 ¶¶ 1, 8.) Watchfire, a limited liability company organized under the laws of Delaware with its principal place of business in Danville, Illinois, manufactures digital displays that use LED components, including components manufactured by Cree. (ECF No. 1 ¶¶ 2, 9.)

---

[1] In its Reply Brief, Defendant withdraws its request for a stay of this matter. (*See* ECF No. 20 at 2 n.1.)

On January 17, 2020, Watchfire filed suit against Cree in Illinois state court alleging two counts of breach of warranty and one count of fraudulent inducement in relation to an ongoing business relationship between the parties in which Watchfire purchased and used Cree's LED bulbs for its high quality displays. (*See* ECF No. 16-1.) Cree removed the Illinois state action to the United States District Court for the Central District of Illinois on February 21, 2020 ("Illinois Action"). (*See* Notice of Removal [ECF No. 1], *Watchfire Signs, LLC v. Cree Inc.*, 2:20-cv-02040-CSB-EIL (C.D. Ill. Feb. 21, 2020).) On February 28, 2020, Cree filed a motion to transfer venue in the Illinois Action, requesting that the court transfer its pending action to this District. (*See* Mot. to Change Venue [ECF No. 6], *Watchfire Signs, LLC v. Cree Inc.*, 2:20-cv-02040-CSB-EIL (C.D. Ill. Feb. 28, 2020).) On the same day, Cree filed the instant action in this Court seeking declaratory judgment as to, among other things: (1) whether Cree's terms and conditions apply to its sale of LEDs to Watchfire; (2) whether Cree was in breach of any warranty to Watchfire in connection with the C4SMB LEDs; (3) whether Watchfire failed to comply with the terms of the warranty; (4) the remedy Watchfire can recover under any warranty; (5) Cree's liability to Watchfire in connection with the C4SMB; and (6) whether Watchfire's claims against Cree with respect to the C4SMB LEDs are time-barred. (ECF No. 1 at 8-10.) On April 15, 2020, Watchfire filed the instant motion to either dismiss Cree's action, stay the action, or transfer it to the Central District of Illinois. (ECF No. 14.)

## II.   DISCUSSION

Watchfire urges this Court to dismiss or transfer this action, arguing primarily that the first-filed rule is applicable and favors the action currently before the Central District of

Illinois.² (ECF No. 14 at 1.) Defendant contends that "[t]his action involves precisely the same issues and parties involved in the Illinois [A]ction" and "[e]very question raised by [Cree] in this case is already at issue in [Watchfire's] earlier-filed action currently pending in federal court in the Central District of Illinois." (ECF No. 16 at 1, 2.) Plaintiff opposes Defendant's motion and argues that transferring or dismissing the action is not appropriate because it falls into one of the exceptions to the first-filed rule. (ECF No. 17 at 1.) Specifically, Plaintiff argues that Watchfire engaged in anticipatory filing and the balance of convenience weighs in favor of the instant matter moving forward in this District. (*Id.* at 7-9.) The Court will first address Watchfire's motion to transfer.

### A. Motion to Transfer

"The Fourth Circuit follows the first-filed rule, which holds that when similar suits are raised in different forums, 'the first suit should have priority.'"³ *Cellular Sales of Knoxville, Inc. v. Chapman*, No. 1:19CV768, 2020 WL 3868806, at *2 (M.D.N.C. July 9, 2020) (quoting *Ellicott Mach. Corp. v. Modern Welding Co.*, 502 F.2d 178, 180 n.2 (4th Cir. 1974)); *see also Carbide & Carbon Chems. Corp. v. U.S. Indus. Chems., Inc.*, 140 F.2d 47, 49 (4th Cir. 1944)) (holding that the earlier-filed lawsuit should be allowed to proceed "without interference from" subsequently filed lawsuits). The rule is founded on the notion of judicial economy and "embodies the concept that the simultaneous prosecution in two different courts of cases relating to the same parties and issues leads to the wastefulness of time, energy, and money." *Cellular Sales*, 2020

---

² The terms "first-filed rule" and "first-to-file rule" are used interchangeably.

³ The Court also notes that courts in the Seventh Circuit and the Central District of Illinois acknowledge the first-filed rule and, like the Fourth Circuit, do not rigidly adhere to it in the face of exceptions. *See Caterpillar, Inc. v. ESCO Corp.*, 909 F. Supp. 2d 1026, 1030 (C.D. Ill. 2012) (citing *Rsch. Automation, Inc. v. Schrader–Bridgeport Int'l., Inc.*, 626 F.3d 973, 977 (7th Cir.2010)).

3

WL 3868806, at *2 (quoting *MEI Techs., Inc. v. Detector Networks Int'l, LLC,* No. CIV 09-0425 RB/LFG, 2009 WL 10665141, at *3 (D.N.M. July 6, 2009) (citation and internal quotations omitted). Multiple lawsuits are governed by the first-filed rule when the basis for each suit is predicated on the same factual issues. *Davis v. Zuccarello*, No. 1:16-CV-01086, 2017 WL 2729089, at *2 (M.D.N.C. June 23, 2017) (citing *Allied–Gen. Nuclear Servs. v. Commonwealth Edison Co.*, 675 F.2d 610, 611 n.1 (4th Cir. 1982)).

However, "[e]ven where the first-filed rule is applicable, a court may prioritize the second-filed suit if the 'balance of convenience' favors the second-filed suit or 'special circumstances' counsel a departure from the first-filed rule." *Great W. Cas. Co. v. Packaging Corp. of Am.*, 444 F. Supp. 3d 664, 670 (M.D.N.C. 2020). Generally, the court that decides to dispense with the first-filed rule in a particular situation is generally the court that is presiding over the first filed action. *See Supreme Int'l Corp. v. Anheuser-Busch, Inc.*, 972 F. Supp. 604, 607 (S.D. Fla. 1997) ("[T]he 'first-filed' court is the more appropriate forum in which to determine whether the first-filed case should proceed, or whether it should give way for reasons of judicial economy to this action."); *see also Tex. Instruments Inc. v. Micron Semiconductor, Inc.*, 815 F. Supp. 994, 999 (E.D. Tex. 1993) (opining that the court presiding over the first filed suit is given the responsibility to determine which suit should proceed and the sister court should not usurp its decision).

1. *Applicability of First-Filed Rule*

In determining whether the first-filed rule is applicable, courts apply a three-factor test, considering "(1) the chronology of the filings, (2) the similarity of the parties involved, and (3) the similarity of the issues being raised." *Dillon v. BMO Harris Bank, N.A.*, 16 F. Supp. 3d 605, 617 (M.D.N.C. 2014) (quoting *Remington Arms Co. v. Alliant Techsystems, Inc.*, No. 1:03CV1051,

2004 WL 444574, at *2 (M.D.N.C. Feb. 25, 2004)). First, with respect to the chronology of the filings, Watchfire initiated its action in Illinois state court on January 17, 2020, (ECF No. 16-1), and Cree initiated the instant action forty-two days later on February 28, 2020, (ECF No. 1). Second, the parties in both actions are identical. Third, the same factual issues provide the basis for each suit. Indeed, Watchfire's earlier-filed complaint in the Illinois Action asserts three claims. Two of those claims are with respect to Cree's alleged breach of warranties. In the Illinois Action, Watchfire alleges that Cree made specific warranties under what it refers to as the "Flex Terms." (ECF No. 16-1 ¶ 31.) According to Watchfire's complaint, the "Flex Terms are the operative contract between the parties concerning at least all C4SMB parts Flex purchased and installed into module for Watchfire to use in its digital signs." (*Id.* at ¶¶ 31, 35.) Watchfire contends that, in the alternative, that should Cree's terms and conditions ("Cree Terms") be found to be the operative terms controlling the dispute, Watchfire performed all of its obligations to Cree, and Cree violated the warranty under those terms. (ECF No. 16-1 ¶¶ 51-54.)

In the present action, Cree seeks a declaratory judgment stating that: (1) Cree's terms and conditions apply; (2) it did not breach its warranty; (3) Watchfire failed to comply with the warranty set forth in Cree's terms and conditions; and (4) Watchfire's claim is barred by the limitations articulated in Cree's terms and conditions. (ECF No. 1 at 8-9.) In order to resolve the issues before it, the Central District of Illinois will necessarily have to determine the question Cree is now asking this Court to declare—what terms apply to the dispute between the parties.

The Illinois Action also includes a count for fraudulent inducement, which is not included in Plaintiff's claims in the current action. The Court, however, does not view

Watchfire's fraudulent inducement claim as central to the disagreement between the parties, as that claim appears to be contingent upon Cree's knowledge of its abilities to perform under the applicable warranty at the time it sold C4SMB LED bulbs to Watchfire. (*See* ECF No. 16-1 ¶¶ 58-75.) While the cases may not be the "mirror image" of one another, they need not be when it is clear that they arise from the same nucleus of facts and involve the same parties. *See Great W.*, 444 F. Supp. 3d at 671. Therefore, the Court finds that the first-filed rule is applicable to the instant matter.

2. *Exceptions to the First-Filed Rule*

Having found that the first-filed rule applies, the Court must now turn to whether any reason exists that would cause the Court to decline to apply the first-filed rule and dismiss, stay, or transfer Cree's action. *See id.* Generally, there are two categories of exceptions to the first-filed rule in the Fourth Circuit. First, "Fourth Circuit precedent and precedent from outside our circuit suggest an exception to the first-filed rule under 'special circumstances.'" *Family Dollar Stores, Inc. v. Overseas Direct Imp. Co.*, No. 3:10-CV-278, 2011 WL 148264, at *3 (W.D.N.C. Jan. 18, 2011). "Special circumstances counseling a departure from the first-filed rule include 'forum shopping, anticipatory filing, or bad faith filing.'" *Great W.*, 444 F. Supp. 3d at 670 (quoting *Nutrition & Fitness, Inc. v. Blue Stuff, Inc.*, 264 F. Supp. 2d 357, 360 (W.D.N.C. 2003)). Special circumstances also have been found to include actions filed in the midst of settlement negotiations. *Remington Arms*, 2004 WL 44574 at *2. Second, "[the Fourth Circuit] has accepted the prospect of an exception when the balance of convenience weighs in favor of the second forum." *Id.* (citing *Learning Network, Inc. v. Discovery Commc'ns, Inc.*, 11 Fed. App'x 297, 300 (4th Cir. 2001)).

6

Cree argues that deviation from the first-filed rule is warranted in the instant action because Watchfire's Illinois Action is the result of an anticipatory filing and because the balance of convenience weighs in favor of this District. (ECF No. 17 at 7.) Cree also argues that "Watchfire initiated its action in Illinois while in the midst of negotiations with Cree regarding the appropriate venue for its arbitration and after receiving notice that Cree intended to challenge Watchfire's chosen venue." (ECF No. 17 at 8.) Watchfire, on the other hand, contends that it is a "prototypical plaintiff in a coercive action for breach of contract" and, given the parties' positions in the underlying dispute, its suit giving rise to the Illinois Action is not anticipatory. (ECF No. 20 at 7.) Watchfire further contends that any issue relating to the convenience of this District as opposed to the Central District of Illinois was resolved by the Central District of Illinois's determination that it was the more appropriate forum when it denied Cree's motion to transfer Watchfire's suit to this District. (ECF No. 20 at 2-6.)

"Anticipatory filings are those filings where, knowing that a suit is imminent, one party rushes to the courthouse to file the action with some improper motive." *Mad Panda, LLC v. Gunnar Optiks, LLC*, No. 5:14-CV-00470-F, 2015 WL 4713243, at *3 (E.D.N.C. Aug. 7, 2015); *see also Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 557 (S.D.N.Y. 2000) (defining an improper anticipatory filing as "one made under the apparent threat of a presumed adversary filing the mirror image of that suit") (quoting *Ontel Prods., Inc. v. Project Strategies Corp.*, 899 F. Supp. 1144, 1150 (S.D.N.Y. 1995)). "The concept of an anticipatory filing is a fluid one that is highly dependent on the factual context of a suit." *Andritz Hydro Corp. v. PPL Mont., LLC*, No. 3:13-CV-412-RJC-DSC, 2014 WL 868750, at *7 (W.D.N.C. Mar. 5, 2014).

As stated earlier, Watchfire filed its complaint in Illinois state court on January 17, 2020, approximately forty days before Cree initiated the instant matter. This is distinct from other

7

cases where the challenged first filed action is filed merely days before the second filed action. "[T]here can be no race to the courthouse when only one party is running." *Learning Network,* 11 Fed. App'x at 301 (discussing exceptions to the first-filed rule for races to the courthouse and forum shopping). Moreover, Watchfire's first-filed suit is coercive in nature, whereas the instant matter is for declaratory judgment. As Cree acknowledges, this places Watchfire in a position that is not common among parties found to have anticipatorily filed an action. (ECF No. 17 at 8 (stating that "Watchfire's positioning in the case perhaps differs from the most common form of anticipatory filing . . .").) However, Cree cites to *Andritz Hydro* in support of its contention that "Watchfire rushed to file its complaint in Illinois while its arbitration proceeding was still pending 'to guarantee favorable conditions for litigation'—the definition of an anticipatory filing." (ECF No. 17 at 8 (emphasis omitted).) The Court does not find this argument persuasive. The record before the Court is not sufficient to support a showing that Watchfire filed its Illinois claim in anticipation of a lawsuit by Cree. This is not a filing where Watchfire was a natural defendant. Here, Watchfire is the natural plaintiff insofar that it filed suit for contract damages in its home district. There is nothing that suggests that Watchfire's action in Illinois was to serve as a placeholder for a more favorable forum.[4] *See Andritz Hydro*, 2015 WL 86870, at *7. The Court finds that the anticipatory filing exception to the first-filed rule does not apply to the instant matter.

Under the exception to the first-filed rule for balance of convenience, "the Court may disregard the first-filed rule and give priority to the second suit filed where there has been a

---

[4] Even if this Court found that Watchfire's earlier filed complaint constituted an anticipatory filing, it would be counter-balanced by judicial comity, causing this Court to weigh heavily the Illinois district court's decision to retain jurisdiction of the first-filed related action and denying Cree's request to transfer it to this district. *Great W.*, 444 F. Supp. 3d at 672; *see also Carbide*, 140 F.2d at 50 (noting that rule of comity "require[s] that certain weight should be given to the decision of another United States district court.")

showing that a balance of convenience sways in favor of the second suit." *SAS Inst., Inc. v. PracticingSmarter, Inc.*, 353 F. Supp. 2d 614, 617 (M.D.N.C. 2005). Plaintiff argues that the interest of convenience and justice favors this action proceeding in this District. Specifically, Cree contends that: (1) its preferred choice of forum is entitled to deference, (ECF No. 17 at 9); (2) this District is more convenient for witnesses, (*id.* at 10); (3) the majority of the evidence is located in this District, (*id.* at 12); and (4) the present caseload in this District as compared to that of the Central District of Illinois favor maintaining this case in this District, (*id.* at 12–13). Watchfire, on the other hand, argues that the Central District of Illinois has already weighed factors regarding the convenience of the Courts and determined that it was an appropriate forum. (ECF No. 20 at 2-3.)

When discussing the convenience exception to the first-filed rule, courts generally apply factors from case law. *Davis*, WL 2729089, at *4. Most often, they look to decisions balancing the convenience of venues under 28 U.S.C. § 1404(a). *Id.* Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." Such requests for a transfer of venue are "committed to the sound discretion of the district court." *Jenkins v. Albuquerque Lonestar Freightliner, LLC*, 464 F. Supp. 2d 491, 493 (E.D.N.C. 2006). When ruling on a motion to transfer, courts consider:

> (1) the plaintiff's initial choice of forum; (2) relative ease of access to sources of proof; (3) availability of compulsory process for attendance of unwilling witnesses, and the cost of obtaining attendance of willing and unwilling witnesses; (4) possibility of a view of the premises, if appropriate; (5) enforceability of a judgment, if one is obtained; (6) relative advantage and obstacles to a fair trial; (7) other practical problems that make a trial easy,

>expeditious, and inexpensive; (8) administrative difficulties of court congestion; (9) local interest in having localized controversies settled at home; (10) appropriateness in having a trial of a diversity case in a forum that is at home with the state law that must govern the action; and (11) avoidance of unnecessary problems with conflicts of laws.

*Plant Genetic Sys., N.V. v. Ciba Seeds*, 933 F. Supp. 519, 527 (M.D.N.C. 1996). The "analysis of these factors is qualitative, not merely quantitative." *Speed Trac Techs., Inc. v. Estes Express Lines, Inc.*, 567 F. Supp. 2d 799, 803 (M.D.N.C. 2008) (quoting *Commercial Equip. Co. v. Barclay Furniture Co.*, 738 F. Supp. 974, 976 (W.D.N.C. 1990)).

### a. Choice of Forum

"The plaintiff's choice of forum generally is entitled to respect and deference and should rarely be disturbed." *Speed Trac*, 567 F. Supp. 2d at 803 (internal citations and quotations omitted). This usual deference is afforded great weight, particularly when the plaintiff sues in its home state. S*ee Campbell v. Apex Imaging Servs., Inc.*, Nos. 1:12CV1366, 1:12CV1365, 2013 WL 4039390, at *3 (M.D.N.C. Aug. 7, 2013). However, deference is diminished when the plaintiff's choice of forum has little connection to the action. *See Parham v. Weave Corp.*, 323 F. Supp. 2d 670, 674 (M.D.N.C. 2004) ("[T]he deference given to the plaintiff's choice is proportionate to the relation between the forum and the cause of action.").

With respect to connection to this District, Watchfire contends that "Cree's choice of forum should be afforded little deference because the cause of action bears little or no relation to North Carolina" and because the case is based on breach of contract which does not raise issues of North Carolina law nor explicitly contemplate any action taken in North Carolina.[5]

---

[5] Defendant contends that neither of the contracts at issue in the underlying matter are governed by North Carolina law as the Flex terms and conditions are governed by the law of California and Cree's terms and

(ECF No. 16 at 12 (quoting *Speed Trac*, 567 F. Supp. 2d at 803).)  According to Watchfire, "the only connection this case has to North Carolina is Cree's presence here." (*Id.* at 13-14.)  Cree, on the other hand, argues that its choice of forum is entitled to deference and that Durham, North Carolina is the "geographic epicenter of the contractual relationship between [the parties]." (ECF No. 17 at 9.)  Further, according to Cree, its "design, manufacture, and testing of its C4SMB LED lamps all occurred either in this district or in China, and its failure analysis testing on product returned from Watchfire took place in Durham, North Carolina." (*Id.* at 10.)  Overall, though there are some connections to North Carolina, these connections do not appear to be significant.

Deference to Plaintiff's choice of forum is also diminished "where a plaintiff files a preemptive declaratory judgment action in order to deprive the natural plaintiff—the one who wishes to present a grievance for resolution by a court, of its choice of forum." *Piedmont Hawthorne Aviation, Inc. v. TriTech Env't Health & Safety, Inc.*, 402 F. Supp. 2d 609, 616 (M.D.N.C. 2005) (internal citation and quotations omitted).  Here, Cree's Complaint references Watchfire's claims in the Central District of Illinois and expressly seeks judgment from this Court that Cree is not liable to Watchfire in connection with the C4SMB bulbs. (ECF No. 1 ¶ 58(A).)  Cree's liability to Watchfire with respect to the C4SMB bulb is the very determination the court in the Central District of Illinois is tasked with making.  This weighs heavily toward a finding that Plaintiff's declaratory judgment action was initiated to deprive the natural plaintiff—Watchfire—of its choice of forum. *Cf. Piedmont Hawthorne*, 402 F. Supp.

---

conditions are governed by the laws of New York. (ECF No. 16 at 13) (citing ECF No. 16-1 at 24, 27).  At this stage in the litigation, the Court need not determine the law that governs either contract.

2d, at 616. Therefore, the Court concludes that Plaintiff's interest in choosing this forum is significantly diminished.

### b. *Relative Ease of Access to Sources of Proof*

"In weighing [the relative ease of access to sources of proof] factor, courts consider the relative ease of access to witnesses and other evidence for trial." *Speed Trac*, 567 F. Supp. 2d at 804 (citing *Blue Mako, Inc. v. Minidis*, 472 F. Supp. 2d 690, 703 (M.D.N.C. 2007) and *Parham*, 323 F. Supp. 2d at 674). With respect to sources of proof, here, there are likely two in the instant case: documents and witnesses. Watchfire contends that "[t]he parties' sources of proof are more easily accessible in Illinois because the majority of witnesses in this case—in particular, non-party witnesses—are located there." (ECF No. 16 at 14.) Plaintiff argues, on the contrary, that "the bulk of the evidence in this case concerns Cree employees, Cree sales, and the terms and conditions of sale applicable to Cree products—all of the evidence of which is located in this district." (ECF No. 17 at 12.)

With respect to witnesses, Watchfire has identified four current employees for whom Illinois is "more convenient." (*See* ECF No. 16 at 15-16.) In addition, Watchfire has identified two non-party witnesses who reside in Illinois. (*Id.* at 15.) Watchfire contends that any other non-party witnesses with pertinent information would reside in California, Mexico, or China, (*see id.* at 16), and provides flight information to support its contention that ligation in Illinois would incur less travel expenses for these potential witnesses, (*see* ECF No. 16-2). Cree, on the other hand, contends that "most of the party witnesses who will provide important testimony in this dispute live in or near the Middle District of North Carolina." (ECF No. 17 at 10.) Cree identifies two party witnesses who live in close proximity to this District. (*Id.*) Cree also identifies a non-party witness it believes resides in close proximity to this District.

(*Id.* at 11.)  However, the convenience of witnesses who are employed by the parties will not substantively factor into the Court's determination because their participation will be obtained as a part of their employment.  *See Samsung Elecs. Co. v. Rambus Inc.*, 386 F. Supp. 2d 708, 719 (E.D. Va. 2005) ("When the 'appearance of witnesses can be secured regardless of the forum's location through court order or persuasion by an employer who is a party to the action, this factor becomes less important.'" (quoting *Anderson v. Century Prods. Co.*, 943 F. Supp. 137, 149 (D.N.H. 1996))).  Therefore, the Court will look to the identified non-party witnesses.  Here, Defendant has identified two non-party witnesses who would potentially be inconvenienced by the matter continuing in this District and Plaintiff has identified one who it believes would be inconvenienced should this matter be transferred.[6]  The Court concludes that on the issue witnesses, this factor is at best neutral.

With respect to documents and other physical evidence that may serve as sources of proof, Cree provides statements from declarants that evidence and documentation regarding the sales of the C4SMB LED bulbs and communications surrounding their alleged defect are located in Durham.  (ECF Nos. 17-1 ¶¶ 16–20, 30–33; 17-2 ¶¶ 24-26.)  Cree argues that maintaining the matter in this District would spare Cree from having to transport documentary evidence as well as lodge testifying witnesses.  (ECF No. 17 at 12.)  Defendant, on the other hand, contends that "the fact that documentary evidence in Cree's possession may be located in North Carolina is all but irrelevant in the era of modern electronic discovery." (ECF No. 20 at 5.)  Neither party offered evidence regarding the nature—hard-copy or electronic—of

---

[6] Plaintiff and Defendant both indicate that there may be other, unnamed, non-party witnesses that may be called.  (ECF Nos. 16 at 16; 17 at 11.)  However, neither party has specified who exactly those witnesses are, so the Court gives little weight to their possible inconvenience.  Furthermore, it is unclear whether Plaintiff knows whether its identified non-party witness actually resides in close proximity to this District, so the Court likewise gives little weight to his possible inconvenience.

its relevant documents. The Court has considered both parties' arguments and concludes that the access to sources of proof factor does not weigh strongly in either party's favor.

        *c.   Cost of Obtaining Attendance of Willing and Unwilling Witnesses*

Here, there is no indication that any witness will be unwilling to participate in this litigation and Defendant does not argue this point. Thus, the Court's analysis of the third discretionary factor—the cost of obtaining attendance of willing and unwilling witnesses—folds into the analysis related to ease of access to proof.

        *d.   Administrative Difficulties of Court Congestion*

Next, courts look to statistics examining how long it generally takes a case to advance from complaint to disposition. *See, e.g.*, *Triad Int'l Maint. Corp. v. Aim Aviation, Inc.*, 473 F. Supp. 2d 666, 671 (M.D.N.C. 2006); *Lab. Corp. of Am. Holdings v. Schumann*, 474 F. Supp. 2d 758, 767-68 (M.D.N.C. 2006). The faster the district brings cases to resolution, "the more appropriate the transfer of venue, as all parties benefit from a speedy resolution of disputes." *Davis v. Stadion Money Mgmt., LLC,* No. 1:19CV119, 2019 WL 7037426, at *4 (M.D.N.C. Dec. 20, 2019) (citing *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1337 (9th Cir. 1984)). These statistics are, of course, of greater importance when they reveal "dramatic" discrepancies in average case time than when they reveal only minor differences. *See Triad Int'l*, 473 F. Supp. 2d at 671.

Here, even though Watchfire does not put forth its own argument relating to the administrative difficulties of court congestion, the statistics provided by Cree amount essentially to a two- week difference in the median filing to disposition. (*See* ECF No. 17 at 13 (providing data indicating that the median civil case advanced from filing to disposition in 10.5 months in this District and in 10 months in the Central District of Illinois).) The Court

finds this factor is likewise neutral. *See Triad Int'l*, 473 F. Supp. 2d at 671 (finding a roughly two-and-a-half months' difference in speed to trial "only marginally shorter" in a congestion analysis).

        e.   *Local Interest in Having Localized Controversies Settled at Home*

The ninth factor—the local interest in having localized controversies settled at home—reflects the judgment of the federal courts that "litigation should take place in the federal judicial district or division with the closest relationship to the operative events." *Speed Trac*, 567 F. Supp. 2d at 804 (citing *In re Volkswagen of Am. Inc.*, 506 F.3d 376, 387 (5th Cir. 2007). Defendant contends that, irrespective of which contract is found to be operative, neither are governed by the laws of North Carolina and that the only connection this case has to North Carolina is Plaintiff's presence. (ECF No. 16 at 13-14.) Plaintiff contends that "the North Carolina community has a greater relationship to the controversy" because "this dispute concerns the applicability of a North Carolina company's terms and conditions and warranty to a customer relationship it made and maintained through employees located in North Carolina, regarding products with sales records and associated communications maintained in and originating from North Carolina." (ECF No. 17 at 13-14.) Here, North Carolina does have an interest and relationship to the operative events as Plaintiff alleges that the dispute involves communications and actions that took place in this District. (ECF No. 1 ¶¶ 7, 14.) Defendant hasn't shown that Illinois has any more connection to the controversies than North Carolina. Thus, the Court finds that this factor is either neutral, or slightly weighs in favor of Plaintiff.

### *f. The Remaining Factors and Summary*

The remaining factors are not germane to this inquiry. No view of a premises is necessary; neither party alleges that there will be difficulty obtaining a judgment or a fair trial; and this is not a diversity case implicating questions of state law or conflicts of law. Of the relevant factors, both parties have presented evidence that results in a finding that the balance of convenience is neutral at best, or slightly weighs in favor of Defendant.

Watchfire contends that "[m]any of these factors are of indeterminate weight or irrelevant to this matter." (ECF No. 16 at 12.) Watchfire has maintained that its motion was not one of mere convenience or efficiency, but one that goes to justice because of the ongoing litigation in the Central District of Illinois. A district court in the Central District of Illinois has already considered, and rejected, many of the arguments Cree offers here as to why this forum is more convenient to resolve the dispute between the parties. (*See generally* ECF No. 19-1.) The Court takes judicial notice of the fact that the Central District of Illinois has already determined that it would be proper to hear the dispute that serves as a springboard for the instant action in that court. (*Id.*) In denying Cree's motion to transfer to this District, the court in the Central District of Illinois stated:

> The court finds the convenience analysis favors keeping the case in the Central District of Illinois. The most important § 1404(a) factor is whether the convenience of the parties and witnesses favors transfer. [citation omitted]. The court has found that this paramount factor is a wash, or slightly favors Plaintiff. The court also determined that the factors of convenience and ease of access and distance to resources and sources of proof were a wash, or at the most concerning some physical materials not electronically transferable, slightly favored Defendant. Situs of material events was a wash, or slightly in favor of Plaintiff. Based on the above, particularly because convenience of witnesses is the most important factor, the court finds that the convenience factors slightly favor the Central District of Illinois as the more convenient forum.

(*Id.* at 28.) This Court gives substantial weight to this finding, particularly given that it is the more appropriate court to make this determination under the first-filed rule. *See R.J. Reynolds Tobacco Co. v. Star Sci., Inc.*, 169 F. Supp. 2d 452, 455 (M.D.N.C. 2001) ("One of the purposes of the 'first-filed' rule is to prevent a court from trenching on the authority of its sister court.") (internal quotation and citation omitted). At the time the Central District of Illinois made its ruling on Cree's motion to transfer, it was aware that, on the same day Cree filed its motion, it also filed the instant action. (*See* ECF No. 19-1 at 30.) The Fourth Circuit has "warned against allowing a declaratory plaintiff to use the [Declaratory Judgment Act] 'to interfere with an action which has already been instituted.'" *R.J. Reynolds*, 169 F. Supp. 2d at 455 (quoting *Aetna Cas. & Surety Co. v. Quarles,* 92 F.2d 321, 325 (4th Cir.1937)). The declaration Cree seeks from this Court is a determination that is more appropriate for the Central District of Illinois, particularly in light of the fact that the Illinois Action has proceeded into scheduling and discovery.

Although Courts should be hesitant to disrupt such a plaintiff's choice of forum, Plaintiff's choice to sue in this District should be afforded less than the usual deference due to the posture of its claims. "Courts may, in their discretion, choose not to hear declaratory judgment cases." *Remington Arms*, 2004 WL 444574, at *6 (citing *Mitcheson v. Harris*, 955 F.2d 235, 237 (4th Cir.1992)). "Among the situations in which it might be appropriate to decline to exercise jurisdiction over a declaratory judgment action is where the same issue sought to be litigated in the declaratory judgment action is pending in another court of competent jurisdiction*." Id.* (citing *Stout v. Grain Dealers Mut. Ins. Co.*, 307 F.2d 521, 523 (4th Cir.1962)). That is precisely the case here. Further, the Fourth Circuit has stated that a declaratory judgment action should not be used "to try a controversy by piecemeal, or to try particular

17

issues without settling the entire controversy, or to interfere with an action which has already been instituted." *Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co.*, 139 F.3d 419, 422 (4th Cir. 1998) (quoting *Quarles*, 92 F.2d at 325) (internal quotations omitted). For this Court to make a declaratory determination on the issues before another district court would lead to the possibility of conflicting rulings and constitute a lack of judicial economy. The Court finds that the balance of convenience in the instant matter does not serve as a reason to deviate from the first-filed rule.

Having determined that the first-filed rule applies and there are no circumstances that would lead this Court to determine that an exception exists, the Court must now determine whether to dismiss this action or transfer it. *See Courtney v. IKEA Holding US, Inc.*, No. 1:16CV1215, 2017 WL 2455100, at *3 (M.D.N.C. June 6, 2017); *see also R.J. Reynolds*, 169 F. Supp. 2d at 455 ("In deciding to forego proceeding with an action because a more appropriate parallel action exists, a district court may dismiss, transfer, or stay the former action."). "Relevant case law suggests that transferring the matter to the court in which the first-filed case is being adjudicated . . . is the preferred action." *Walker Grp., Inc. v. First Layer Commc'ns, Inc.*, 333 F. Supp. 2d 456, 460-61 (M.D.N.C. 2004) (compiling cases). The Court concludes that the appropriate action is to transfer this case to the Central District of Illinois which comports with judicial economy.

Based on the findings set forth above, the Court enters the following:

**ORDER**

IT IS THEREFORE ORDERED that Defendant's Motion to Dismiss or Transfer, (ECF No. 14), is GRANTED and the Clerk of Court shall transfer this action to the United States District Court for the Central District of Illinois and terminate this action.

This the 1st day of December 2020.

/s/ Loretta C. Biggs
United States District Judge